OPINION
{¶ 1} Defendant-appellant Harley McDonald, a juvenile, appeals his adjudication in the Licking County Court of Common Pleas, Juvenile Division, finding him delinquent on the charges of burglary and underage consumption of alcohol. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE {¶ 2} On February 6, 2006, a complaint was filed in the Licking County Court of Common Pleas, Juvenile Division, charging appellant with one count of burglary, a second degree felony if committed by an adult, in violation of R.C. 2911.12(A)(2) and underage consumption of alcohol, a first degree misdemeanor if committed by an adult, in violation of R.C.4301.69(E) (1 ).
 {¶ 3} On February 6, 2006, appellant appeared before the trial court for arraignment. Appellant appeared simultaneously with his sister, both appearing individually, having been charged with identical offenses. Both juveniles were accompanied by their parents.
 {¶ 4} At the arraignment hearing, appellant admitted the charges, without the assistance of counsel. Via Judgment Entry of February 7, 2006, the trial court adjudicated appellant delinquent on both charges.
 {¶ 5} On March 7, 2006, appellant again appeared before the trial court, and the court imposed a term of probation. Appellant was not represented by counsel at this disposition hearing. The trial court memorialized appellant's sentence via Judgment Entry filed March 8, 2006. *Page 3 
 {¶ 6} On March 20, 2006, appellant's probation officer filed a motion for further hearing, alleging appellant violated the terms of his probation. On the same day, appellant appeared before the trial court, again without representation by counsel, and admitted to the probation violation. Via Judgment Entry of March 21, 2006, the trial court adjudicated appellant a probation violator.
 {¶ 7} On March 24, 2006, appellant again appeared before the trial court without counsel for disposition resulting from his probation violation. Via Judgment Entry of March 27, 2006, the trial court committed appellant to the Ohio Department of Youth Services for a minimum of one year, maximum of age twenty-one. The court also suspended appellant's driving privileges until the age of twenty-one.
 {¶ 8} Appellant now appeals, assigning as error:
 {¶ 9} "I. THE TRIAL COURT VIOLATED HARLEY MCDONALD'S RIGHT TO COUNSEL AND RIGHT TO DUE PROCESS UNDER THE FIFTH, SIXTH, ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTION SIXTEEN OF THE OHIO CONSTITUTION, OHIO REVISED CODE SECTION 2151.352, AND JUVENILE RULES 4, 29, AND 35.
 {¶ 10} "II. THE TRIAL COURT ERRED IN DEPRIVING HARLEY MCDONALD OF HIS RIGHT TO APPLY FOR DRIVING PRIVILEGES BECAUSE THE STATUTE DOES NOT PROVIDE FOR THAT SANCTION AS A DISPOSITIONAL OPTION FOR HARLEY'S OFFENSES.
 {¶ 11} "III. THE TRIAL COURT ERRED WHEN IT FAILED TO HOLD A HEARING TO DETERMINE WHETHER HARLEY MCDONALD, A JUVENILE, WAS ABLE TO PAY THE SANCTION IMPOSED BY THE JUVENILE COURT AND WHEN IT *Page 4 
FAILED TO CONSIDER COMMUNITY SERVICE IN LIEU OF THE FINANCIAL SANCTIONS IN VIOLATION OF R.C. 2152.20."
 I {¶ 12} In his first assignment of error, appellant asserts the trial court violated his right to counsel by failing to obtain a valid waiver of counsel and by failing to inform appellant of his right to counsel at all stages of the proceedings.
 {¶ 13} R.C. 2151.352 establishes the right to counsel in all juvenile proceedings:
 {¶ 14} "A child, the child's parents or custodian, or any other person in loco parentis of the child is entitled to representation by legal counsel at all stages of the proceedings under this chapter or Chapter 2152. of the Revised Code. If, as an indigent person, a party is unable to employ counsel, the party is entitled to have counsel provided for the person pursuant to Chapter 120. of the Revised Code except in civil matters in which the juvenile court is exercising jurisdiction pursuant to division (A)(2), (3), (9), (10), (11), (12), or (13); (B)(2), (3), (4), (5), or (6); (C); (D); or (F)(1) or (2) of section 2151.23 of the Revised Code. If a party appears without counsel, the court shall ascertain whether the party knows of the party's right to counsel and of the party's right to be provided with counsel if the party is an indigent person. The court may continue the case to enable a party to obtain counsel, to be represented by the county public defender or the joint county public defender, or to be appointed counsel upon request pursuant to Chapter 120. of the Revised Code. Counsel must be provided for a child not represented by the child's parent, guardian, or custodian. If the interests of two or more such parties conflict, separate counsel shall be provided for each of them."
 {¶ 15} Juvenile Rule 4(A) governs assistance of counsel, stating: *Page 5 
 {¶ 16} "(A) Every party shall have the right to be represented by counsel and every child, parent, custodian, or other person in loco parentis the right to appointed counsel if indigent. These rights shall arise when a person becomes a party to a juvenile court proceeding. When the complaint alleges that a child is an abused child, the court must appoint an attorney to represent the interests of the child. This rule shall not be construed to provide for a right to appointed counsel in cases in which that right is not otherwise provided for by constitution or statute."
 {¶ 17} Juvenile Rule 29(B) provides in pertinent part:
 {¶ 18} "(B) Advisement and findings at the commencement of thehearing
 {¶ 19} "At the beginning of the hearing, the court shall do all of the following:
 {¶ 20} "(1) Ascertain whether notice requirements have been complied with and, if not, whether the affected parties waive compliance;
 {¶ 21} "(2) Inform the parties of the substance of the complaint, the purpose of the hearing, and possible consequences of the hearing, including the possibility that the cause may be transferred to the appropriate adult court under Juv. R. 30 where the complaint alleges that a child fourteen years of age or over is delinquent by conduct that would constitute a felony if committed by an adult;
 {¶ 22} "(3) Inform unrepresented parties of their right to counsel and determine if those parties are waiving their right to counsel;
 {¶ 23} "(4) Appoint counsel for any unrepresented party under Juv. R. 4(A) who does not waive the right to counsel;
 {¶ 24} "(5) Inform any unrepresented party who waives the right to counsel of the right: to obtain counsel at any stage of the proceedings, to remain silent, to offer *Page 6 
evidence, to cross-examine witnesses, and, upon request, to have a record of all proceedings made, at public expense if indigent."
 {¶ 25} In In re Gault (1967), 387 U.S. 1, 87 S.Ct. 1428, the United States Supreme Court held juveniles facing possible commitment must be afforded the protections of the Due Process Clause of theFourteenth Amendment, including the right to counsel and appointed counsel, if indigent. Before permitting a waiver of counsel, the court has a duty to make an inquiry to determine the relinquishment is of "a fully known right" and is voluntary, knowingly and intelligently made. Id.
 {¶ 26} A defendant's waiver of the right to counsel must be voluntary, knowing and intelligent. State v. Gibson (1976), 45 Ohio St.2d 366. In order to establish an effective waiver of the right to counsel, the trial court must make sufficient inquiry to determine whether the defendant fully understands and intelligently relinquishes the right. Id.
 {¶ 27} The trial court must fully and clearly explain the right to counsel, and the party must then affirmatively waive the right on the record. In re East (1995), 105 Ohio App.3d 221. A voluntary, knowing, and intelligent waiver of the right to counsel must affirmatively appear on the record. In re Kuchta (Mar. 10, 1999), Medina App. No. 2768-M.
 {¶ 28} In Gibson supra, the Ohio Supreme Court held a trial court must provide sufficient warning to the defendant of the seriousness of the trial and the possible results it could have for his liberty and life. The Court stated:
 {¶ 29} "* * * This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver *Page 7 
by the accused.' To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. * * *" Gibson, supra, at 376-377, citing Von Moltke v. Gillies (1948), 332 U.S. 708, 723,68 S.Ct. 316, 323.
 {¶ 30} In State v. Martin (2004), 103 Ohio St.3d 385, the Ohio Supreme Court held a defendant must be adequately advised of the perils of self-representation, stating:
 {¶ 31} " To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.' " Id. at 377, 74 O.O.2d 525, 345 N.E.2d 399, quoting Von Moltke v. Gillies (1948),332 U.S. 708, 723, 68 S.Ct. 316, 92 L.Ed. 309.
 {¶ 32} * * *
 {¶ 33} "The trial court cautioned Martin at times that it would be best if Martin were represented by counsel ("I would caution you against abandoning your lawyers but that's your choice"). But the court did not adequately explain the nature of the charges, *Page 8 
the statutory offenses included within them, the range of allowable punishments, possible defenses, mitigation, or other facts essential to a broad understanding of the whole matter, per Von Moltke,332 U.S. at 724, 68 S.Ct. 316, 92 L.Ed. 309, and Gibson, 45 Ohio St.2d at 377,74 O.O.2d 525, 345 N.E.2d 399.
 {¶ 34} "We therefore conclude that Martin was not "made aware of the dangers and disadvantages of self-representation' so that the record established that `he [knew] what he [was] doing and his choice [was] made with eyes open.' Faretta, 422 U.S. at 835, 95 S.Ct. 2525,45 L.Ed.2d 562, quoting Adams v. United States ex rel. McCann,317 U.S. at 279, 63 S.Ct. 236, 87 L.Ed. 268. If the court had properly complied with these requirements and had clearly advised Martin that he had no right to be "co-counsel" and that his only choices were to proceed pro se or with counsel, Martin may have made a different choice."
 {¶ 35} In State v. Bumphus (February 11, 2005), App. No. E-030043, 2005-Ohio-536, the Sixth District Court of Appeals, addressed this issue, holding:
 {¶ 36} "To establish an effective waiver of right to counsel, the trial court must make sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes that right.'Gibson, paragraph two of the syllabus. To be valid [a defendant's] waiver [of counsel] must be made with an apprehension of the nature of the charges, the statutory offense included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.' Martin, supra, at ¶ 40, citingGibson, supra, at 377, 345 N.E.2d 399 and quoting Von Moltke v.Gillies (1948), 332 U.S. 708, 723, 68 S.Ct. 316, 92 L.Ed. 309. `A judge *Page 9 
can make certain that accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all of the circumstances under which such a plea is tendered.' Von Moltke, supra, at 724. The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.' Johnson v. Zerbst (1938), 304 U.S. 458, 464,58 S.Ct. 1019, 82 L.Ed. 1461. A sketchy or minimal inquiry touching upon only some of the above-enumerated factors will not adequately establish an effective waiver of counsel. State v. McQueen (1997),124 Ohio App.3d 444, 447, 706 N.E.2d 423."
 {¶ 37} Similarly, the Ninth District held in State v. Yeager (Sept. 21, 2005), App. No. 21510, 2005-Ohio-4932:
 {¶ 38} "However, `[c]ourts are to indulge every reasonable presumption against the waiver of a fundamental constitutional right including the right to be represented by counsel.' (Citations omitted.) State v.Dyer (1996), 117 Ohio App.3d 92, 95, 689 N.E.2d 1034. Accordingly, `a valid waiver affirmatively must appear in the record, and the State bears the burden of overcoming the presumption against a valid waiver.'State v. Martin ("Martin I"), 8th Dist. No. 80198, 2003-Ohio-1499, at ¶ 8, citing Dyer, 117 Ohio App.3d at 95, 689 N.E.2d 1034. `In order to establish an effective waiver of right to counsel, the trial court must make sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes that right.' Gibson, 45 Ohio St.2d at paragraph two of the syllabus. *Page 10 
 {¶ 39} `In determining the adequacy of the trial court's inquiry in the context of a defendant's waiver of counsel, this Court reviews the totality of the circumstances. State v. Ragle, 9th Dist. No. 22137,2005-Ohio-590, at ¶ 12. In assuring that a waiver of counsel is made knowingly, voluntarily, and intelligently, a trial court should advise the defendant of the dangers and disadvantages of self representation. See Gibson, 45 Ohio St.2d at 377, 345 N.E.2d 399. See, also,Faretta, 422 U.S. at 835; State v. Weiss (1993), 92 Ohio App.3d 681,686, 637 N.E.2d 47. While no one factor is determinative, the trial court should advise the defendant of the nature of the charges and the range of allowable punishments, and, in addition, advise the defendant of the possible defenses to the charges and applicable mitigating circumstances. See Gibson, 45 Ohio St.2d at 377, 345 N.E.2d 399, citingVon Moltke v. Gillies (1948), 332 U.S. 708, 723, 68 S.Ct. 316,92 L.Ed. 309. However, this Court has held that the trial court's discussion of possible defenses and mitigating circumstances need not be fact specific. State v. Trikilis, 9th Dist. Nos. 04CA0096-M 04CA0097-M,2005-Ohio-4266, at ¶ 13, citing Ragle at ¶ 12. `[A] broader discussion of defenses and mitigating circumstances as applicable to the pending charges is sufficient.' Trikilis at ¶ 13. In addition, a court may consider various other factors, including the defendant's age, education, and legal experience in determining that a waiver of counsel is made knowingly, voluntarily, and intelligently. Id., citing State v.Doane (1990), 69 Ohio App.3d 638, 647, 591 N.E.2d 735."
 {¶ 40} In the case sub judice, appellant appeared at the February 6, 2006 arraignment hearing with his parents, unrepresented by counsel. The following *Page 11 
exchange took place during the hearing relative to appellant's proceeding unrepresented:
 {¶ 41} "The Court: Do you understand what you're charged with?
 {¶ 42} "Harley: Yes, sir.
 {¶ 43} "The Court: Do you have any question about what you're charged with?
 {¶ 44} "Harley: No, sir.
 {¶ 45} "The Court: Megan, did you follow along as I read through the complaint?
 {¶ 46} "Megan: Yes, sir.
 {¶ 47} "The Court: Do you understand what you're charged with?
 {¶ 48} "Megan: Yes, sir.
 {¶ 49} "The Court: Do you have any question about what you're charged with?
 {¶ 50} "Megan: No, sir.
 {¶ 51} "The Court: I've been handed rights explanations forms in both cases. In both cases they've been signed. In Harley's case it was signed by Wayne McDonald, which is what he goes — goes by, and his father. And I see that in Megan's case it was signed by Megan and her mother. Let me explain to both of you that any time you come to court you have the right to have an attorney represent you even if you can't afford one. Harley, do you understand that?
 {¶ 52} "Harley: Yes, sir.
 {¶ 53} "The Court: Do you want a lawyer to represent you in this case?
 {¶ 54} "Harley: No, I don't, sir.
 {¶ 55} "The Court: Dad, are you in agreement with his decision to go ahead without a lawyer? *Page 12 
 {¶ 56} "Mr. McDonald: Yes, sir.
 {¶ 57} "The Court: Mom, are you in agreement?
 {¶ 58} "Ms. McDonald: Yes, sir.
 {¶ 59} "The Court: Megan, do you understand that you have the right to have a lawyer represent you in this case?
 {¶ 60} "Megan: Yes, sir.
 {¶ 61} "The Court: Do you know that if you or your family can't afford one the court would appoint a lawyer to represent you free of charge?
 {¶ 62} "Megan: Yes, sir.
 {¶ 63} "The Court: Do you want a lawyer to represent you in this case?
 {¶ 64} "Megan: No, sir.
 {¶ 65} "The Court: Mom, do you agree with respect to Megan?
 {¶ 66} "Ms. McDonald: Yes, sir.
 {¶ 67} "The Court: Dad, do you agree as well?
 {¶ 68} "Mr. McDonald: Yes, sir.
 {¶ 69} "The Court: Very well. The next thing we need to do is have you both enter pleas. In juvenile court there are two possible pleas. You can either admit or deny a charge. An admission means that what's in the complaint's true, you're accepting full responsibility for it, you're saying you don't want to have a trial, you're giving up all the rights that go along with having a trial, giving up any defenses that you might have to the charge, throwing yourself on the mercy of the Court. On the other hand, a denial means you disagree with all or part of what's in the complaint or that you have some sort of defense to the charge, or simply that you want to exercise your *Page 13 
Constitutional rights to see if the State can prove what they've charged you with doing. You're each also charged with two separate offenses so you don't have to enter the same plea on both counts. For example, you could admit to one and deny the other. And the two of you aren't in any way bound by what the other does. I mean, Harley could admit to both of his and and Megan could deny hers. I mean, this is four separate counts. Each of you need to separately enter pleas on your own counts. Harley, do you understand that?
 {¶ 70} "Harley: Yes, sir.
 {¶ 71} "The Court: Are you ready to enter a pleas in this matter?
 {¶ 72} "Harley: Yes, sir. Sir, I mean, the — all that I didn't take all that stuff right there, sir.
 {¶ 73} "The Court: The way your complaint reads is it says Harley with two others broke into Rhonda Yates' home and all three stole the following and then it gives the list.
 {¶ 74} "Harley: No, sir. That . . .
 {¶ 75} "The Court: It says — hang on.
 {¶ 76} "Harley: Okay.
 {¶ 77} "The Court: It says the allegation is that's what was stolen between the three of you. It's not picking out who did what. It's saying between the three of you all those things were stolen. That's what you're charged with. I can't get into it right now whether you did or didn't do it. If you want to deny you did that, then you should enter a plea of denial. But you understand it's not saying you stole all of those things *Page 14 
individually? It says the three of you went in and all those things were stolen between the three of you. You understand then what you're charged with?
 {¶ 78} "Harley: Yes, sir.
 {¶ 79} "The Court: Megan, do you understand that as well?
 {¶ 80} "Megan: Yes, but . . .
 {¶ 81} "The Court: Okay. But what?
 {¶ 82} "Megan: When I stole the C-Ds I put them back.
 {¶ 83} "The Court: Okay. I — I don't want to get into what happened. We're not — at that point. Do you understand what you're charged with?
 {¶ 84} "Megan: Yes, sir.
 {¶ 85} "The Court: As I've just explained the pleas, for each count you can either admit or deny. Or if you think there's some confusion now about what you should be charged with, you can still change your mind and ask for an attorney.
 {¶ 86} "Harley: I'll admit to the charge, sir.
 {¶ 87} "The Court: You're charged with with a burglary. Do you want to admit to that?
 {¶ 88} "Harley: Yes, sir.
 {¶ 89} "The Court: Harley, is it correct you also want — what do you want to — what plea do you want to enter to the underage alcohol consumption charge?
 {¶ 90} "Harley: I don't want to lie, sir, so I'll do it too, sir.
 {¶ 91} "The Court: You want to admit to that as well?
 {¶ 92} "Harley: Yes, sir. *Page 15 
 {¶ 93} "The Court: And, Megan, you're charged with the same two offenses. Do you understand what you're charged with . . .
 {¶ 94} "Megan: Yes, sir.
 {¶ 95} "The Court: . . . in the burglary?
 {¶ 96} "Megan: They're not saying you stole all those things. They're saying you were part of a burglary and all those things were stolen between the three of you. Now do you understand what you're charged with?
 {¶ 97} "Megan: Yes, sir.
 {¶ 98} "The Court: Do you want to admit or deny the burglary charge?
 {¶ 99} "Megan: Admit.
 {¶ 100} "The Court: Do you understand by admit do you okay. Before I get to that. As far as Count Two, it's the underage alcohol consumption charge of that you were drinking beer. Do you want to admit or deny that?
 {¶ 101} "Megan: Admit.
 {¶ 102} "The Court: So you want to admit to both charges?
 {¶ 103} "Megan: Yes, sir.
 {¶ 104} "The Court: Harley, and you want to admit to both charges?
 {¶ 105} "Harley: Yes, sir.
 {¶ 106} "The Court: Let me explain a number of things before we go any further. By admitting to these charges both of you are giving up the right to have a trial, giving up all the rights that go along with having a trial, and giving up any defenses that you might have to the charge. Do you understand that, Harley?
 {¶ 107} "Harley: Yes, sir." *Page 16 
 {¶ 108} Tr. at 5-12
 {¶ 109} On March 20, 2006, appellant again appeared before the trial court without counsel for an adjudication hearing on his probation violation. During the hearing, the following exchange occurred:
 {¶ 110} "The Court: Before the court is the matter of Harley Wayne McDonald. This is A2006, Case Number 90. We were just here on March the 7th, less than two weeks ago, I released Harley from detention and placed him on probation. And then this morning Ms. Norris filed a motion for further hearing alleging that Harley had violated his probation. Harley is back today with his father. Ms. Norris is here and Ms. Layton's here from Family Intervention Services. Harley, did you receive a copy of the motion for further hearing?
 {¶ 111} "* * *
 {¶ 112} "The Court: Do you understand what you're charged with?
 {¶ 113} "Harley: Yes, sir.
 {¶ 114} "The Court: Do you have any question about what you're charged with?
 {¶ 115} "Harley: No, sir.
 {¶ 116} "The Court: I'm going to hand you the rights explanation form that's been signed by Harley and his father and I see the waiver of attorney section has been signed by both. Harley, you understand that you have the right to have a lawyer represent you in this matter?
 {¶ 117} "Harley: Yes, sir.
 {¶ 118} "The Court: You know that if you or your family can't afford one the court will appoint a lawyer to represent you free of charge? *Page 17 
 {¶ 119} "Harley: Yes, sir.
 {¶ 120} "The Court: Do you want a lawyer to represent you in this case?
 {¶ 121} "Harley: No, sir.
 {¶ 122} "The Court: Dad, do you agree with his decision to go ahead without a lawyer?
 {¶ 123} "Mr. McDonald: Yes, sir.
 {¶ 124} "The Court: The next thing we need to do then is have you enter a plea. There are two possible pleas. You can either admit or deny that you violated your probation as alleged in the motion. Do you understand what the two pleas are and what they mean?
 {¶ 125} "Harley: Yes, sir.
 {¶ 126} "The Court: Are you ready to enter a plea?
 {¶ 127} "Harley: I deny the charge, sir.
 {¶ 128} "The Court: All right. Now you said you've don't want to have an attorney but you want to deny the charge. So you want to have a full hearing to decide whether you violate violated your probation but you want to do that without an attorney?
 {¶ 129} "Harley: I don't know, sir. I just know that I called I called my mom saying I was I told her I was sick and stuff. She was going to run me out to the hospital later on that night or to go to see like what was wrong with me. I've been having migraines and stuff and I have a big record of migraines and I I (inaudible) hurt real bad and . . . *Page 18 
 {¶ 130} "The Court: Well, you can have a full hearing without an attorney if that's what you want to do. So you just want to come in and tell your side of the story without an attorney?
 {¶ 131} "Harley: Yes, sir.
 {¶ 132} "The Court: Dad, are you in agreement with that plan?
 {¶ 133} "Mr. McDonald: Is that what you want to do, Wayne?
 {¶ 134} "Harley: (Inaudible.) If I admitted to the charge, will I get to tell my side of the story, sir?
 {¶ 135} "The Court: You would, but I'll tell you you're you're in real serious risk of going to D-Y-S. I'm not I haven't prejudged or made a decision that's going to happen, but there's at least a serious concern that that's going to happen. But certainly I'll hear anything you have to say if you want to admit to the charge. But I don't want anyone to — I don't want you to feel pressured into admitting to something you don't — don't think that you did.
 {¶ 136} "Harley: Then can I — will I be able to represent myself, sir?
 {¶ 137} "The Court: You can represent yourself.
 {¶ 138} "Harley: Can I do that, sir?
 {¶ 139} "The Court: Sure. So you want to deny the charge . . .
 {¶ 140} "Harley: Yes, sir.
 {¶ 141} "The Court: . . . and have a hearing on it, but you want to represent yourself?
 {¶ 142} "Harley: Yes, sir.
 {¶ 143} "The Court: Dad, you in agreement with that? *Page 19 
 {¶ 144} "Mr. McDonald: I don't think Wayne understands what he's saying to be honest with you, Your Honor.
 {¶ 145} "The Court: Well, let me tell you how a — a probation violation hearing is about like a trial. It's a little different. The burden of proof is — is less and it's a little less formal hearing. But basically I have to, at the end of the hearing, hear from the State, hear from Harley if he wants to present anything, and decide whether the Agency or the probation department and the State has proved by substantial evidence. That means that it's not convinced beyond a reasonable doubt, just that there's substantial evidence to believe that he violated his probation. It sounds like no one's disputing the fact that he wasn't in school on Friday. It sounds to me like Harley's theory is that he wasn't there but he had a reason for not being there. And I I may be reading between the lines and may be wrong. So, I mean, if that's the simple thing, he probably can tell me why he wasn't' there. But, on the other hand, to ensure — to best ensure that his rights are protected perhaps you want — may want to get him an attorney. But ultimately I'm not here to tell you whether to get an attorney or not. That's — that's the family's decision. It's ultimately Harley's decision to be made with his parent's.
 {¶ 146} (Inaudible discussion between juvenile and his father.)
 {¶ 147} "Harley: Am I — I'm being charged with not going to school, sir?
 {¶ 148} "* * *
 {¶ 149} "The Court: I don't want there to be any — cause remember I also asked has any have any threats or promises been made. I'll promise you I'll hear your story, but that's the only promise I'm making. Understand?
 {¶ 150} "Harley: Yes, sir. *Page 20 
 {¶ 151} "The Court: But I'm also telling you honestly I haven't made up my mind that D-Y-S is the right answer either. I will keep an open mind. We clear on that?
 {¶ 152} "Harley: (Inaudible.)
 {¶ 153} "The Court: On that basis then how do you want to proceed?
 {¶ 154} "Harley: I'm guilty, sir.
 {¶ 155} "The Court: You want to admit to the charge?
 {¶ 156} "Harley: Yes, sir.
 {¶ 157} "The Court: You understand that by admitting that you're giving up the right to have an evidentiary hearing, giving up all the rights that go along with having a hearing, giving up any defenses that you might have to the motion?
 {¶ 158} "Harley: Yes, sir.
 {¶ 159} "The Court: By defenses that might mean things such as you missed a day of school but you were sick. I don't know that that would be a defense to not calling your P-O. I guess if you had laryngitis or something and you couldn't call that might be a defense. But I mean if there was some defense, you could — you could raise that in a hearing. You understand that?
 {¶ 160} "Harley: Yes, sir.
 {¶ 161} "The Court: If we had a full hearing, I wouldn't find you a probation violator unless the case was proved by substantial evidence. You'd have the right to have an attorney represent you and, If you couldn't afford one, the court would appoint one to represent you free of charge. You'd have the right to confront and cross-examine the witnesses against you. You'd have the right to testify and give your side of the story if you wanted to or the right to remain silent without your silence being held against you in *Page 21 
any way. You'd have the right to bring your own witnesses into court if you had any. If you had witnesses that didn't' want to come in on their own, the court would issue subpoenas which are court orders requiring your witnesses to come to court. If we had a full hearing, we would tape record it so there'd be a permanent record of everything said and done so that if you didn't like the way I decide the case you could appeal my decision to Judge Hoover, who's head of the court, or you could appeal to a higher court which would be the Licking County Court of Appeals. You'd have the right to have an attorney represent you on appeal and, if you couldn't afford one, the court would appoint a lawyer to represent you on appeal and, if you admit to this, there's not going to be a trial so there's not going to be anything to appeal so you're giving up all those rights. You still keep the right to give an explanation before I decide what's going to happen, but you can't quite say that you didn't commit a probation violation. If you admit to it, you're saying it happened so you can't present evidence that it didn't happen. But you can present evidence or or tell me any reason any explanation or maybe anything in terms of mitigation. In other words, that would make it seem less serious than it really is, but you can't say it didn't happen. You can only give me an explanation of why or maybe why why I shouldn't put you in D-Y-S. you understand what I'm saying?
 {¶ 162} "Harley: (No audible response.)
 {¶ 163} "The Court: So you understand what the possible penalties are here?
 {¶ 164} "Harley: Yeah.
 {¶ 165} "The Court: Okay. You were on probation for two charges, the most serious the burglary charge. I could lock you up in D-Y-S for a minimum period of a *Page 22 
year to a maximum period of your twenty-first birthday. I could restore you to your existing terms of your probation. I could impose new terms of probation. I could impose finds [sic], court costs, restitution, community service hours. I could suspend your right to drive till age twenty-one. Take you out of your home and put you in a foster home. All those things are possible. Do you understand that?
 {¶ 166} "Harley: (Inaudible.)
 {¶ 167} "The Court: Has anyone threatened you or promised you anything to get you to admit this probation violation?
 {¶ 168} "Harley: No, sir.
 {¶ 169} "The Court: You're doing this of your own free will? And so to make sure you're — you're under no misunderstanding, I may — at the end of this hearing, I may very well send you to D-Y-S. You understand that?
 {¶ 170} "Harley: Yes, sir.
 {¶ 171} "The Court: And I might not. I'm going to hear what you have to say, I'm going to hear what Ms. Norris has to say, and I'll make the decision. But I want to make it clear, no one's promising you anything. You understand?
 {¶ 172} "Harley: (No audible response.)
 {¶ 173} "The Court: You still want to give up your rights, you understand what the possible penalties are if you admit to this charge?
 {¶ 174} "Harley: Yeah.
 {¶ 175} "The Court: Dad, are you in agreement with him admitting?
 {¶ 176} "Mr. McDonald: Yes, sir."
 {¶ 177} Tr. at 2-16 *Page 23 
 {¶ 178} Upon our review of the initial February 6, 2006 exchange, we find the trial court did not adequately determine whether appellant's waiver of counsel was made voluntarily, knowingly and intelligently. The trial court did not make sufficient inquiry to determine whether the juvenile fully understood and intelligently relinquished his right to counsel. The trial court did not adequately warn appellant of the dangers and disadvantages of self-representation. As discussed in our analysis of Ohio caselaw, the trial court should have advised appellant of the nature of the charges and the range of allowable punishments, and in addition, the possible defenses to the charges and applicable mitigating circumstances, prior to accepting appellant's waiver of counsel.
 {¶ 179} Further, the trial court does not cure this initial deficient waiver of counsel by engaging in additional colloquy with the appellant later in the proceedings relative to appellant's entering an admission or denial of the charge. As we have found appellant's initial waiver of counsel defective, all other proceedings thereafter are necessarily similarly tainted.
 {¶ 180} Appellant's first assignment of error is sustained.
 II and III {¶ 181} Based upon our analysis and disposition of appellant's first assignment of error, we find appellant's second and third assignments of error premature. *Page 24 
 {¶ 182} For the foregoing reason, the judgment of the Licking County Court of Common Pleas, Juvenile Division, is reversed, and the cause remanded to the trial court for further proceedings in accordance with the law and this opinion. By: Hoffman, J., Delaney, J. concurs separately.
Gwin, P.J. dissents. HON. WILLIAM B. HOFFMAN HON. W. SCOTT GWIN HON. PATRICIA A. DELANEY *Page 25