[Cite as *State v. Evans*, 2019-Ohio-603.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 28924 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JUSTIN M. EVANS | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR-2017-05-1888(A) |

DECISION AND JOURNAL ENTRY

Dated: February 20, 2019

CARR, Judge.

{¶1} Appellant, Justin Evans, appeals the judgment of the Summit County Court of Common Pleas. This Court reverses and remands.

I.

{¶2} In the late evening hours of April 14, 2017, Evans entered a Taco Bell along with his wife and a teenage boy and proceeded to get into an altercation with several employees. The incident occurred after the restaurant's dining room had closed for the evening. The Summit County Grand Jury indicted Evans on one count of aggravated burglary in relation to the incident. Evans' wife, Ashley Morris, was also charged with aggravated burglary.

{¶3} The matter proceeded to a bench trial. When Evans learned that Morris intended to testify against him, he decided to represent himself at trial. The trial court ultimately found Evans guilty of the charge and sentenced him to five years imprisonment.

{¶4} On appeal, Evans raises three assignments of error.

II.

## ASSIGNMENT OF ERROR I

APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AMENDMENT AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHEN THE TRIAL COURT DID NOT PROPERLY ADVISE APPELLANT OF THE DANGERS OF SELF REPRESENTATION. ACCORDINGLY, APPELLANT DID NOT KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY WAIVE HIS RIGHT TO COUNSEL.

{¶5}  In his first assignment of error, Evans contends that the trial court did not take the proper steps to ensure that his waiver of his right to counsel was knowing, intelligent, and voluntary. This Court agrees.

{¶6}  The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, provides criminal defendants with the fundamental right to counsel. *See Gideon v. Wainwright*, 372 U.S. 335, 339-340 (1963). A defendant, however, may waive this right where his waiver is made knowingly, intelligent, and voluntary. *State v. Gibson*, 45 Ohio St.2d 366, 377-378 (1976), citing *Faretta v. California*, 422 U.S. 806 (1975).

> In order to establish an effective waiver of [the] right to counsel, the trial court must make sufficient inquiry [of the defendant] to determine whether [the] defendant fully understands and intelligently relinquishes that right.

*Gibson*, 45 Ohio St.2d 366, at paragraph two of the syllabus.

{¶7}  In order to ensure that a defendant's waiver of counsel is made knowingly, intelligently, and voluntarily, a trial court should determine whether the defendant was advised of the dangers and disadvantages of self-representation. *Gibson* at 377. A valid waiver should be made with "an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges

and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." *State v. Smith*, 9th Dist. Summit No. 23006, 2007-Ohio-51, ¶ 8, quoting *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, ¶ 39, quoting *Gibson* at 377. No single factor is dispositive. *State v. Trikilis*, 9th Dist. Medina Nos. 04CA0096-M, 04CA0097-M, 2005-Ohio-4266, ¶ 13. When reviewing the adequacy of the trial court's inquiry in the context of a defendant's waiver of counsel, this Court reviews the totality of the circumstances. *Id.* at ¶ 13, citing *State v. Ragle*, 9th Dist. Summit No. 22137, 2005-Ohio-590, ¶ 12.

{¶8} Moreover, Crim.R. 44(A) provides that "[w]here a defendant charged with a serious offense is unable to obtain counsel, counsel shall be assigned to represent him at every stage of the proceedings from his initial appearance before a court through appeal as of right, unless the defendant, after being fully advised of his right to assigned counsel, knowingly, intelligently, and voluntarily waives his right to counsel." Crim.R. 44(C) further provides, in part, that "in serious offense cases the waiver shall be in writing." This Court has recognized that "[w]hile a signed waiver is the preferred practice, the absence of a waiver is harmless error if the trial court has substantially complied with Crim.R. 44(A)." *Trikilis* at ¶ 14.

{¶9} In this case, the parties addressed several issues at the outset of trial, including a number of motions. Evans had also executed a jury waiver form and the trial court conducted a brief colloquy regarding the waiver. The trial court then held a brief recess in order for Evans' co-defendant, Morris, to proffer a statement because she planned to testify against Evans.

{¶10} After the recess, Evans asked to address the trial court and stated that upon learning that his wife intended to testify against him, he wanted to represent himself at trial. Specifically, Evans stated, "I wanted to know if I could represent myself pro se so I can question the witnesses." Evans stated that while he believed that trial counsel was "a great attorney[,]" he

thought witnesses would be less likely to misrepresent the facts if he had the opportunity to ask questions. Evans further asked if trial counsel could sit with him during the trial.

{¶11} In response, the trial court noted that Evans had a constitutional right to represent himself but indicated that it would be necessary to "go over a few things[.]" The following exchange then took place on the record:

| | |
|---|---|
| The Court: | While I appreciate that you're very close to the situation and you know it * * * probably better than anyone, you would agree with me, though, you haven't gone to law school. * * * You've never been a practicing attorney, right? |
| Evans: | Yes |
| The Court: | You don't understand or know the rules of evidence, correct? |
| Evans: | Right, yes, not -- you know. |
| The Court: | And while your emotions are probably running very high with regard to that, * * * this is still something that is very serious. And that's why we have attorneys. That's why we have lawyers that represent us. [Trial counsel] has been an attorney for decades. He's gone to law school. He's a very, very good lawyer. Has been practicing in this county for many, many years. He's well-respected by the courts and his colleagues. You have great counsel here for you. I'm not going to force you to allow him to be first chair, but I want you to consider all those things. |

{¶12} Evans indicated that he understood. However, Evans maintained that he was an "innocent man" and that the testimony at trial would be based "on a lot of lies." Evans stressed that with Morris in particular, it would be harder for her to lie if he was asking the questions. Evans then asked for "a second" to confer with trial counsel. After another recess, the following exchange occurred on the record:

| | |
|---|---|
| Evans: | Taking into consideration what you said and talking to [trial counsel], I still do want to proceed pro se. |
| The Court: | Okay. And you understand you're going to be opening yourself up to many disadvantages as we go through trial. Do you understand that? |

| | |
|---|---|
| Evans: | Disadvantages as far as what? |
| The Court: | Well, not knowing the rules of evidence, not necessarily understanding objections, when to make an objection, how to respond to an objection, things of that nature. |
| Evans: | Yes. Yeah. |
| The Court: | Okay. And I'm going to appoint [trial counsel] to assist you, but, however, he can only be standby counsel. He can't make any objections. He can't cross-examine or question any witnesses. He can't make any statements. He's only there to confer with you on the side. You understand that? |
| Evans: | Yes. |
| The Court: | And it's still your wish to waive your right to counsel? |
| Evans: | Yes. |
| The Court: | Okay. I find that to be knowingly, voluntarily and intelligently made. But you've relinquished that right. |

{¶13} Evans did not execute a written waiver of counsel in this case pursuant to Crim.R. 44(C). As noted above, the absence of a written waiver is harmless if the trial court substantially complied with Crim.R. 44(A). *Trikilis*, 2005-Ohio-4266, at ¶ 14.

{¶14} After reviewing the record, we cannot say that Evans knowingly, intelligently, and voluntarily waived his right to counsel. Though Evans was seemingly pleased with the performance of trial counsel, he sought to represent himself after learning that his wife planned to testify against him. The State acknowledges that Evans' decision to proceed pro se was a "last minute decision[.]" The trial court engaged in a discussion with Evans where it emphasized that trial counsel was a well-respected attorney and that Evans' lack of familiarity with the evidentiary rules would put him at a disadvantage at trial. Significantly, however, the trial court made no mention of the actual charges against Evans or the existence of lesser included offenses. Furthermore, the trial court did not discuss the range of allowable punishments, nor did it

reference possible defenses. While the trial court noted that the matter was "very serious[,]" it did not engage in a dialogue that would have given Evans a "broad understanding of the whole matter[.]" *See generally Trikilis* at ¶ 17, quoting *Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, at ¶ 43. It follows that under the totality of the circumstances, Evans was not adequately informed of the dangers of self-representation.

**{¶15}** Evans' first assignment of error is sustained.

## ASSIGNMENT OF ERROR II

APPELLANT'S CONVICTION WAS BASED UPON INSUFFICIENT EVIDENCE AS A MATTER OF LAW[.]

**{¶16}** In his second assignment of error, Evans contends that his conviction was not based on sufficient evidence. Specifically, Evans contends that the State failed to present evidence demonstrating that he acted with force, stealth, or deception when he entered the Taco Bell. Evans stresses that his wife had keys to the restaurant due to the fact that she was an assistant manager and he simply followed her into the premises to get some food. Evans further maintains that he did not initiate any of the physical confrontations that occurred in the restaurant. This Court disagrees.

**{¶17}** We note that this Court's resolution of Evans' first assignment of error renders moot his third assignment of error. Notably, however, we must still address Evans' sufficiency challenge as a reversal on sufficiency grounds would bar retrial. *See Trikilis*, 2005-Ohio-4266, at ¶ 19.

**{¶18}** Evans was convicted of aggravated burglary in violation of R.C. 2911.11(A)(1), which states that "[n]o person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with

purpose to commit in the structure * * * any criminal offense if * * * [t]he offender inflicts, or attempts or threatens to inflict physical harm on another[.]"

{¶19} "Force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). While "stealth" is not defined by the Ohio Revised Code, this Court has defined the term as "any secret, sly or clandestine act to avoid discovery" when attempting to gain entry into a premises. *State v. Fleming*, 9th Dist. Lorain Nos. 15CA010792, 15CA010793, 2017-Ohio-871, ¶ 9. (Internal quotations and citations omitted.) The term "deception" is defined as "[k]nowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact." R.C. 2913.01(A).

{¶20} When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*. at paragraph two of the syllabus.

{¶21} The State presented evidence at trial that supported the following narrative. Evans and Morris married in February 2017. The marriage occurred a short time after Evans ended his romantic involvement with J.J., Morris's friend and fellow employee at the Taco Bell in Cuyahoga Falls. There was a lingering tension between Evans, Morris, and J.J. in the days leading up to the event. Morris' employment status at Taco Bell had come into question because her performance had declined and she had not showed up for work as scheduled.

{¶22} On the evening of April 14, 2017, Evans and Morris drove to Chapel Hill Mall where they picked up a teenage boy who was related to Evans. The group drove from the mall to Taco Bell. Morris testified that Evans was upset with J.J. and that he went to Taco Bell "to get into an altercation." When Evans, Morris, and the juvenile arrived at the Taco Bell, the dining room was closed and customers were required to use the drive-through window. The doors to the dining room were locked. When J.J. saw the group, she initially locked herself in the cooler for safety and tried to call the police. She exited the cooler after realizing that she could not get cell phone reception. As an assistant manager, Morris had keys to the restaurant in her car. Morris testified that Evans took her keys and gave them to the juvenile so that he could open the door. The juvenile entered first, followed by Evans, and then Morris. Multiple employees were inside at the time that the group entered the restaurant, including J.J. and the general manager, A.K. Morris did not have the right to bring anyone into the restaurant at that time.

{¶23} A.K. was cleaning up when he noticed the group enter and he promptly told them to leave. Evans pointed out J.J. to the juvenile. The juvenile then went after J.J. and started throwing punches. A.K. grabbed the juvenile and pushed him toward the front of the store. The juvenile picked up a plastic container used for collecting coins and threw it at M.S., the woman who was working the drive-through window. Evans and the juvenile grabbed M.S. and

attempted to pull her over the counter. When A.K. intervened, Evans and the juvenile punched A.K. repeatedly. A.K. was bruised and bloodied during the skirmish. M.S. tried to stop the attack by using a broom against Evans. Evans wrestled the broom away from M.S. and struck her with it. The intruders left before police arrived.

{¶24} The evidence presented at trial was sufficient to support Evans' conviction for aggravated burglary. We are mindful that with a challenge to the sufficiency of the evidence, we must construe the evidence in the light most favorable to the State. *Jenks*, 61 Ohio St.3d at 279. While Evans maintains that he simply accompanied Morris into the restaurant after she used her key to open the door, the State presented evidence that Evans slipped Morris's key to the juvenile so that they could enter the restaurant and carry out an attack on J.J. This occurred late at night after the restaurant's dining room had closed. A chaotic scene unfolded as soon as the group entered. Though Evans suggests that he merely stood by the counter during the fracas, the evidence suggests that the juvenile attacked J.J. at Evans' direction. Evans also worked with the juvenile in an attempt to pull M.S. over the counter. When A.K. intervened, Evans punched A.K. repeatedly. This evidence, when construed in the light most favorable to the State, was sufficient to sustain Evans' conviction for aggravated burglary.

{¶25} The second assignment of error is overruled.

### ASSIGNMENT OF ERROR III

APPELLANT'S CONVICTION FOR AGGRAVATED BURGLARY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶26} In his third assignment of error, Evans contends that his conviction was against the manifest weight of the evidence. This Court's resolution of Evans' first assignment of error is dispositive of this appeal. Accordingly, we decline to address Evans' final assignment of error as it has been rendered moot.

III.

**{¶27}** Evans' first assignment of error is sustained. The second assignment of error is overruled. This Court declines to address the third assignment of error as it has been rendered moot. The judgment of the Summit County Court of Common Pleas is reversed and the cause remanded for further proceedings consistent with this decision.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

DONNA J. CARR
FOR THE COURT

SCHAFER, P. J.
CALLAHAN, J.
CONCUR.


APPEARANCES:

JEFFREY N. JAMES, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.